# FREEMAN *v.* WAID.

PATENTS; INTERFERENCE; PRIORITY; OPERATIVENESS; ORIGINALITY; EVIDENCE.

1. A senior application in interference, which discloses a shoe machine containing a tucker blade designed to stretch a lasted upper inwardly over the edge of the last, and upwardly toward the nozzle of a correlated tacking device, so as to reduce the width of the heel seat and remove the loose portions of the upper and counter at the inner ends of the heel seat, and to hold the same until fastened by the tacker, will not be regarded as failing to satisfy the requirement of the issues that the tucker blade be in such relation to the nozzle of the tacking device as to allow the blade to enter the welt crease and engage the stitches, where the senior party's specifications import that it was intended to engage the shoe between the upper and welt, and state that it is adapted for such engagement, and where the

drawings disclose a vertical space between the nozzle and blade, which, although less than that in the junior party's device, and contended by him to be insufficient to admit the welt, will, in view of the difference in the thickness of welts, be assumed adaptable to meet the contingency in the absence of a contrary showing.

2. The fact that the tucker blade of a shoe machine of a senior party in interference contains no notch for admitting a tack, as in the junior party's device, the blade being designed to stretch a lasted upper inwardly over the edge of the last, and upwardly toward the nozzle of a correlated tacking device, so as to reduce the width of the heel seat and remove the loose portion of the upper and counter at the inner ends of the heel seat, and to hold the same until fastened by the tacker,—will not be *held* to render the same inoperative, upon the theory that there would be insufficient material at the end of the blade to receive a tack, and that the upper would not be sufficiently stretched at the sides of the blade to make a tack effective, where there is no evidence to show that it is necessary to trim the welt seam so close to the stitches as is shown in the junior party's drawing, and the testimony for the senior party shows that his machine with an unnotched blade has been continuously in use in a shoe factory for some time, and that it engages the welt seam and forces the upper from the last where it is fastened by the tacker.

3. Evidence *held* sufficient to show that the senior party in interference is the originator of the invention, and entitled to priority.

No. 864. Patent Appeal. Submitted January 13, 1914. Decided April 6, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from the Commissioner of Patents in an interference proceeding involving a machine used in the manufacture of shoes. It operates on the hollow portion of the shoe for the purpose of taking up the fullness that exists between the heel seat and the ends of the welt.

The following are the counts of the issue:

"1. A machine of the class described, comprising a project-

ing arm secured to the machine and adjustable lengthwise, and tacking mechanism, the engaging end of said arm and the delivery point of said tacking mechanism approximately coinciding, said engaging end of the arm being in position to permit a lasted shoe upper and welt to be pushed thereover for stretching a loose portion of the upper tightly over a last in position to receive a tack from said tacking mechanism while so held stretched.

"2. A machine for gathering in and holding the upper of a lasted welt shoe at the inner ends of the heel seats while they are being tacked, consisting of a tacking device, a frame, a resilient arm mounted on the frame, the free end of said arm being in position to permit a lasted shoe upper and welt to be pushed thereover for stretching the upper over a last in position to receive a tack from said tacking mechanism while so held stretched.

"3. A machine of the class described, comprising stationary positioning means to engage the shoe between the welt and upper in position to press against the adjacent line of stitches and stretch the upper over the last, and means for driving a tack to retain the upper while held thus stretched.

"4. A machine of the class described, comprising a projecting arm secured to the machine, having a thin wide end shaped and arranged to engage the upper beneath the welt, and tacking mechanism including a nozzle, said engaging end of the arm being located immediately below and approximately in line with the tack-delivering end of said nozzle.

"5. A machine of the class described, comprising a positioning member having an engaging end to enter beneath the welt to press the upper forward over the last, said end being unyielding to forward pressure of the shoe and yielding to vertical pressure of the shoe, and tack-delivering means located approximately in vertical alignment with the extremity of said engaging end of said member.

"6. In a machine for working over a last the portions of shoe stock adjacent to the ends of the inseam, means for engaging the shoe in the welt crease to tighten the upper over the

last, said means being constructed and arranged for automatic movement upwardly under endwise pressure against it.

"7. In a machine for working an upper over a last, a lasting device for engaging the shoe stock in the welt crease, combined with tack-driving means, said lasting device being constructed and arranged to move the shoe automatically toward the tack-driving means when pressure is applied in the direction for forcing the upper over the last.

"8. In a machine of the class described, tack-driving means, combined with a lasting device located below the tack-driving means and comprising a spring arm adapted to engage a welted shoe in the welt crease, and constructed and arranged to lift the shoe toward the tacking means by the pressure applied in forcing the upper into the lasted position.

"9. A machine of the class described having, in combination, a tacker, means for working into lasted position the upper of a welted shoe adjacent to the end of the inseam and the end of the row of heel-seat tacks, said means being constructed and arranged to engage the shoe stock between the upper and the welt, and force the upper inwardly over the edge of the last and upwardly toward the tacker, and to hold the upper under tension while it is fastened by the tacker."

Appellant, Louis G. Freeman, filed his application August 22, 1907, and appellee, James F. Waid, filed his application December 24, 1906. Waid is accordingly the senior party. Two questions are presented for determination: (1) Whether the application of Waid discloses the subject-matter of the issue, and (2) which of the parties is the originator of the invention?

*Mr. A. D. Salinger* and *Mr. Horace A. Dodge,* for the appellant.

*Messrs. Wood & Wood* for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

Waid's application is assailed on the ground that it does not disclose a machine for bringing the tucker blade in such relation to the tack nozzle as to allow the blade to enter the welt crease and engage the stitches. The tucker blade in Waid's device, it is urged, is only a fractional blade, not intended to engage the shoe between the upper and the welt, as called for in the counts of the issue. Waid, in his original specification, seems to meet this objection in the following language: "The object of my invention is to produce a machine which will gather the surplus and loose portions of the upper and counter at the inner ends of a heel seat adjacent to the ends of the welt, and push them in toward the medial line of the shoe and hold them there while they are tacked. Hitherto, in making welt shoes, after the shoe came from the inseam stitcher and welt trimmer, that portion of the heel seat towards the shank of the shoe was comparatively loose. It was the custom to push the material in as well as possible, and insert and drive a tack by hand. But with this method the open ends of the heel seat just adjacent to the ends of the welt were left so wide that they would spread, making a wide heel seat, and in the subsequent operation of trimming the edge of the outsole, the cutter would run into and sever the stitches at the shank of the last. I have produced a machine to make the heel seats narrow adjacent to the welt. * * * I have found by actual measurement that I can make the heel seats an eighth of an inch narrower adjacent to the welt by this means. The result is that the upper and counter conforms snugly to the shank of the last and a very narrow heel seat is formed, so that the shoe is not only better shaped, but in the subsequent operations the stitching is not damaged by the sole trimmer."

A comparison of Freeman's specification and drawing discloses that both parties were seeking to reduce the width of the heel seat adjacent to the ends of the welt, and to secure the loose portions of the shoe at these points. From Waid's speci-

fication it appears that his device was intended to take up the loose material adjacent to the welt and force the edges of the upper against the tucker arm. It is also stated that the arm is adapted for engagement between the upper and welt in the welt seam. It is also contended by counsel for Freeman that there is not sufficient vertical space in Waid's device between the end of the nozzle and the tucker blade to admit the welt. The drawing discloses space,—true, not so great as shown in Freeman's drawing, but it appears from the testimony that the welt differs in different sized shoes. It will therefore be assumed that this contingency can be met, especially in the absence of an affirmative showing to the contrary.

Waid's device is also assailed as inoperative in that the end of the blade does not contain a notch, and it would be inoperative if substituted for the blade of Freeman, since the tacks could only be driven, if at all, at the side of the blade where the upper would not be stretched to the extent required. This ground of inoperativeness does not appear from the record to have been urged in the lower tribunals of the Patent Office. It was first suggested by the Board of Examiners in Chief, but we are not satisfied that the objection has merit, since it does not clearly appear that the result suggested would obtain. This objection was answered in the opinion of the Commissioner as follows: "It appears that the Examiners in Chief are of the opinion, from examination of Freeman's drawing, that there would not be enough material in front of the arm to receive a tack, unless the arm was provided with a notch, as in Freeman's device. There is no testimony, however, to show that it is necessary or customary to trim the welt seam as close to the threads as shown in Fig. 3 of Freeman's drawing. Not only is there no testimony upon which this holding of the Examiners in Chief is based, but the testimony on behalf of Waid, as indicated above, shows that the machine equipped with an arm of the character illustrated in his drawing has been continuously in use in the Krippendorf-Dittman factory since December of 1906, and that in the operation of the device the arm engages the welt seam and forces the upper from the last, where it is

secured by a tack driven by the tacker. As heretofore stated, the notch in the blade does not form an element of the issue. Freeman's specification merely states that his blade is preferably provided with a notch, and Freeman himself does not appear to have urged this ground of inoperativeness." We are therefore of opinion that Waid is entitled to make the claims of the issue.

Coming to the second question, we have examined the record carefully, and are in accord with the holding of the Commissioner that Waid was the originator of the invention, and is entitled to the award of priority. A full review of the evidence on this point appears in the opinion of the Commissioner, and, inasmuch as we are in agreement with both his statement of fact and his conclusions, no good reason suggests itself for a restatement here.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.　　　　　　　　　　　　　　　　*Affirmed.*